FILED

2022 Aug-17  PM 12:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| RONALD BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00558-ACA-SGC |
| | ) | |
| COMMISSIONER JEFF DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint under 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States and seeking money damages and injunctive relief. (Doc. 14).[1] The plaintiff names in their official and individual capacities the following defendants: (1) Kay Ivey, the Governor of Alabama; (2) Jefferson S. Dunn, who was the Commissioner of the Alabama Department of Corrections when the plaintiff commenced this action; (3) Wardens Carla Jones, (4) Gwendolyn D. Givens, and (5) Anthony Brooks, each of

---

[1] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

whom was employed at St. Clair Correctional Facility when the plaintiff commenced this action; and (6) Correctional Officer Horace S. Altice.  (Doc. 14 at 2-3, 11).[2,3]

Presently pending is Governor Ivey's motion to dismiss on multiple jurisdictional grounds – namely, Article III standing and Eleventh Amendment immunity.  (Doc. 51).  Governor Ivey also requests that the court vacate an order taxing the costs of personal service against her and suggests the court revise its pre-service screening procedures so she is not haled into court by a *pro se* prisoner again and instead can "focus on her many pressing duties as Governor (including seeking kinds of system-wide improvements that this inmate himself appears to seek)." (Doc. 51).  The standing and Eleventh Amendment immunity arguments asserted by Governor Ivey brought to the attention of the undersigned jurisdictional issues with respect to certain claims against the other defendants.  Accordingly, this report and recommendation addresses not only jurisdictional issues with respect to the claims against Governor Ivey but also jurisdictional issues with respect to certain claims against Commissioner Hamm; Former Commissioner Dunn; Wardens Jones, Givens, and Brooks; and Officer Altice.  *See Smith v. GTE Corp.*, 236 F.3d 1292,

---

[2] Where a defendant has clarified his or her name on the record, the court defers to that denomination as opposed to the denomination used by the plaintiff.  (*See* Doc. 37 at1-2; Doc. 49 at 1).

[3] John Hamm replaced Jefferson S. Dunn as the Commissioner of the Alabama Department of Corrections on January 1, 2022.  Therefore, the court directed the Clerk of Court to substitute John Hamm, in his official capacity, as a defendant for Jefferson S. Dunn, in his official capacity, pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*.  (Doc. 53).

1298 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."); 28 U.S.C. § 1915A(b)(2) (requiring court to dismiss from a prisoner's complaint a claim that "seeks monetary relief from a defendant who is immune from such relief"); *Amiri v. Bd. of Trs. of Univ. of Alabama*, 440 F. Supp. 3d 1267, 1275 (N.D. Ala. 2020) ("Courts may, but are not required to, raise Eleventh Amendment Immunity *sua sponte*.").

For the reasons discussed below, the undersigned recommends the court dismiss all claims against Governor Ivey without prejudice for lack of jurisdiction (albeit on narrower grounds than those for which she advocates), together with certain claims against the remaining defendants. To the extent the jurisdictional analysis leaves a potentially viable claim against Warden Jones, the undersigned recommends the court dismiss that claim pursuant to Rule 4(m) of the *Federal Rules of Civil Procedure* for lack of service. The undersigned recommends the court deny Governor Ivey's request that it vacate the order taxing the costs of personal service against her. Finally, the undersigned recommends the court refer the surviving claims to her for further proceedings intended to address deficiencies in the responsive submissions made by the remaining defendants and ensure this case proceeds without further delay.

## A. Procedural History

The plaintiff commenced this action by filing a § 1983 complaint on April 6, 2019, asserting claims related to an attack he suffered on March 20, 2019, while housed at St. Clair Correctional Facility (also referenced as "St. Clair") in Springville, Alabama, and the violent conditions not only at St. Clair but within all facilities under the purview of the Alabama Department of Corrections (also referenced as "ADOC").  (Doc. 1).[4]  The court entered an order on July 1, 2019, directing the plaintiff to amend this complaint to correct certain deficiencies.  (Doc. 10).  The plaintiff filed an amended complaint on August 11, 2019.[5]

The court entered an order on July 6, 2020, directing the Clerk of Court to serve each defendant with a copy of the amended complaint, directing each defendant to submit a service waiver within 40 days, and directing each defendant to file a "special report" within 60 days.  (Doc. 16).  The court defined a "special report" as a written report presenting the sworn statement of all persons having knowledge of the facts relevant to the claims or any subsequent investigation

---

[4] The complaint was docketed as filed on April 12, 2019, but the court deems the complaint filed on April 6, 2019, the latter of two execution dates of the complaint.  *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988) (holding a *pro se* prisoner's submission is deemed filed on the date it is delivered to prison authorities for mailing); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) ("Absent evidence to the contrary in the form of prison logs or other records, [a court] will assume [a *pro se* prisoner's] motion was delivered to prison authorities the day he signed it . . . .").

[5] The complaint was docketed as filed on August 14, 2019, but the court deems the complaint filed on August 11, 2019, the date on which the plaintiff signed the complaint.  *See supra* n.4.

undertaken with respect to the claims.  (Doc. 16).  Eventually, Commissioner Dunn, Warden Givens, and Officer Altice filed service waivers.  (Docs. 20, 22, 43).  After affording Governor Ivey, Warden Jones, and Warden Brooks multiple chances to file service waivers and advising them of the consequences of failing to do so, the court directed the U.S. Marshal to serve those defendants personally with copies of the summons and amended complaint and taxed the costs of such service to those defendants.  (Docs. 25, 32, 35, 38, 40, 42, 44).  The U.S. Marshal successfully served Governor Ivey and Warden Brooks but not Warden Jones.  (Docs. 39, 46, 47).

Commissioner Dunn and Warden Givens jointly filed a special report.  (Doc. 37).  Warden Brooks and Officer Altice filed an answer but not the special report required by the July 6, 2020 order.  (Doc. 49).  Governor Ivey filed what the court construed as an objection she did not have an opportunity to move for dismissal of all claims against her before being required to submit a special report.  (Doc. 50). The court sustained the objection and gave Governor Ivey the opportunity to file a motion to dismiss.  (Doc. 50).  Governor Ivey accepted the court's offer.  (Doc. 51). The plaintiff was provided with an opportunity to file a response to Governor Ivey's motion to dismiss but did not do so.  (Doc. 50).  The plaintiff has been transferred from St. Clair Correctional Facility to Ventress Correctional Facility.  (Doc. 48).

### B. Factual Allegations

The plaintiff was housed in St. Clair's H-Dorm at the time of the incident that prompted him to commence this action: his attack by two inmates on March 20, 2019. (Doc. 14 at 5, 12). He sets the scene by describing H-Dorm as a large building that houses approximately 120 inmates who are monitored by a single officer most days. (Doc. 14 at 12). The officer's desk is located at the very front of the dorm, such that the officer is unable to view the entire dorm. (Doc. 14 at 12). According to the plaintiff, many of the officers assigned to H-Dorm sleep, watch television, play dominoes, and "show complete disregard for what is going on in the dorm." (Doc. 14 at 12). The officers do not enforce the bed assignment policy. (Doc. 14 at 12). Inmates freely move amongst beds, and if the assignee of a bed finds another inmate there, he must find another bed or risk being assaulted by an armed inmate. (Doc. 14 at 12). An "alarming number" of inmates are armed with knives, wooden clubs, and other weapons. (Doc. 14 at 13). Many inmates openly use drugs and alcohol, and this substance use appears to be condoned by officers. (Doc. 14 at 13). The plaintiff has witnessed "countless" inmates collapse from drug use in the presence of officers and counselors who do nothing. (Doc. 14 at 13).

To provide further context for his attack, the plaintiff alleges that on March 19, 2019, approximately 20 inmates, including Justin Jones, were involved in a racially-motivated riot. (Doc. 14 at 13). Several inmates were assaulted. (Doc. 14

at 13).  Inmate Jones struck one inmate in the face with a steel lock and chased another inmate with a knife.  (Doc. 14 at 13).  The plaintiff asserts "[t]here is no doubt" everyone, including two unidentified officers on duty in H-Dorm, witnessed the riot, including Inmate Jones's conduct.  (Doc. 14 at 13).[6]  However, the officers did not report or otherwise document the incident or question or punish Inmate Jones.  (Doc. 14 at 13).  The whole thing was "swept under the rug."  (Doc. 14 at 13).

Then, the plaintiff was awakened in the middle of the night on March 20, 2019, to find Inmate Jones stabbing him and another inmate he was unable to identify beating him with a wooden club.  (Doc. 14 at 5, 12, 14).[7]  The plaintiff screamed for help, but no one responded, including Officer Altice, who was on duty and stationed at the officer's desk approximately 30-35 feet from the attack.  (Doc. 14 at 14).  As he made his way toward the front of the dorm, the plaintiff blacked out twice due to blood loss.  (Doc. 14 at 14).  When he arrived, Officer Altice made him wait more than 30 minutes before allowing him to seek medical care.  (Doc. 14 at 14).  The plaintiff stumbled toward the health care unit and met Lieutenant Robinson, who stated Officer Altice had not told him the plaintiff had been stabbed.  (Doc. 14 at

---

[6] The plaintiff notes this was one of the rare occasions on which more than one officer was assigned to H-Dorm.  (Doc. 14 at 13).

[7] The plaintiff believes Inmate Jones tested positive for methamphetamine later that evening. (Doc. 14 at 14).

14).  Lieutenant Robinson escorted the plaintiff to the health care unit.  (Doc. 14 at 14).  After a preliminary examination, the plaintiff was rushed to an outside hospital, where he received emergency treatment for stab wounds to his head, left arm, and right cheek; bruises; and knots.  (Doc. 14 at 14).  The plaintiff continues to suffer constant, agonizing headaches and experiences dizziness.  (Doc. 14 at 16).  He is easily frightened and awakens from sleep thinking he is being attacked.  (Doc. 14 at 16).

The plaintiff depicts the March 19, 2019 riot and his subsequent middle-of-the-night attack as part of a larger problem: the unconstitutional conditions of the prisons under ADOC's purview.  (Doc. 14 at 15).  He alleges Governor Ivey, the current and former ADOC Commissioners, and Wardens Jones, Givens, and Brooks know the conditions are unconstitutional but have not remediated the constitutional deficiencies, including the violence that takes place in ADOC prisons.  (Doc. 14 at 15).  As evidence of this knowledge, the plaintiff references (1) press releases regarding the unconstitutional conditions; (2) reports authored by the U.S. Department of Justice, the Equal Justice Initiative, and the Southern Poverty Law Center; (3) lawsuits regarding the unconstitutional conditions; and (4) statements made by Governor Ivey and Commissioner Dunn to the media that acknowledge "barbaric conditions," including a "staggering" number of murders, rapes, and assaults; extortion; corruption amongst state employees; overcrowding; and

understaffing.  (Doc. 14 at 15).  The plaintiff asserts that at this point it would be disingenuous for these defendants to deny knowledge of the unconstitutional conditions.  (Doc. 14 at 15).  According to the plaintiff, Governor Ivey, as the chief executive officer of Alabama, has an obligation to implement reasonable measures to remediate violence within the Alabama prison system.  (Doc. 14 at 15).

Based on the foregoing, the court discerns the following claims: (1) an Eighth Amendment failure-to-protect claim against Governor Ivey in her official and individual capacity; (2) an Eighth Amendment failure-to-protect claim against Commissioner Hamm in his official capacity; (3) an Eighth Amendment failure-to-protect claim against Former Commissioner Dunn in his individual capacity; (4) an Eighth Amendment failure-to-protect claim against Wardens Jones, Givens, and Brooks in their official and individual capacities;[8] (5) an Eighth Amendment failure-to-intervene claim against Officer Altice in his official and individual capacities; and (3) an Eighth Amendment claim against Officer Altice in his official and individual

---

[8] The undersigned perceives the thrust of the failure-to-protect claim to be that Governor Ivey, the current and former ADOC Commissioners, and Wardens Jones, Givens, and Brooks have failed, and continue to fail, to protect the plaintiff from an environmental risk of harm at the hands of other inmates based on generalized conditions of dangerousness in ADOC facilities.  *See, e.g., Bugge v. Roberts*, 430 F. App'x 753, 757-59 (11th Cir. 2011) (distinguishing between an Eighth Amendment claim based on an individual risk posed to a plaintiff, such as specific threats directed toward a plaintiff for reasons personal to him, and an Eighth Amendment claim based on an environmental risk created by generalized conditions of dangerousness).  The undersigned notes the special report filed by Former Commissioner Dunn and Warden Givens addresses the failure-to-protect claim as if based only on a specific threat posed to the plaintiff by Inmate Jones.  (Doc. 37 at 11-15).

capacities for deliberate indifference to the plaintiff's medical needs.  The plaintiff seeks money damages and, with respect to his failure-to-protect claim, also injunctive relief compelling the State of Alabama to curb violence within its prisons. (Doc. 14 at 5).

## C. Analysis

### A. Jurisdictional Analysis

#### 1. Standing

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  There are "three strands of justiciability doctrine – standing, ripeness, and mootness – that go to the heart of the Article III case or controversy requirement." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks omitted and alteration adopted).  The standing and mootness strands of the doctrine are implicated here.

"Perhaps the most fundamental doctrine that has emerged from the case-or-controversy requirement is that of standing."  *Women's Emergency Network v. Bush*, 323 F.3d 937, 943 (11th Cir. 2003).  A plaintiff bears the burden of pleading and proving standing.  *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1414 (11th Cir. 1985).  He must do so for each claim asserted and form of relief sought, *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017), and on a

defendant-by-defendant basis, *Lewis v. Bentley*, 2017 WL 432464, at *3 (N.D. Ala. Feb. 1, 2017);[9] *Anderson v. Raffensperger*, 497 F. Supp. 3d 1300, 1307 (N.D. Ga. 2020); *Disability Rts. South Carolina v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) (citing *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)).

> More specifically, a plaintiff must plead:
>
> (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.

*Women's Emergency Network*, 323 F.3d at 943 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff "must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements," and "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (noting pleading requirement articulated in *Whitmore* has "long been known"). When evaluating the sufficiency of factual allegations from a standing

---

[9] *Aff'd in part, rev'd in part, and remanded sub nom. Lewis v. Governor of Alabama*, 896 F.3d 1282 (11th Cir. 2018), *on reh'g en banc*, 944 F.3d 1287 (11th Cir. 2019), *aff'd in part sub nom. Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019), *aff'd sub nom. Lewis v. Governor of Alabama*, 816 F. App'x 422 (11th Cir. 2020).

perspective, courts have employed a standard similar to that governing review under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.  *See, e.g., Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014) (citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013)); *Spencer v. United States*, 71 F. Supp. 3d 1331, 1334 n.1 (S.D. Ga. 2014) (same); *Evanston Ins. Co. v. Yeager Painting, LLC*, 2017 WL 7199654, at *1 (N.D. Ala. Dec. 13, 2017).[10]

Here, the amended complaint fails to allege facts sufficient to plausibly suggest Governor Ivey caused unconstitutional conditions at ADOC facilities that expose the plaintiff to the threat of violence at the hands of other inmates.  The only allegation contained in the complaint that connects Governor Ivey with the conditions at ADOC facilities is the assertion she is the chief executive officer of the State of Alabama.  However, something more than Governor Ivey's status as the chief executive officer of the State of Alabama is required to trace an injury to her.  *See Disability Rts. South Carolina*, 24 F.4th at 901-02 (holding defendant's status as Governor of South Carolina and his general duty, as state's chief executive officer, to execute state laws did not satisfy traceability requirement of Article III standing);

---

[10] Review under Rule 12(b)(6) requires that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and should be liberally construed, *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015), but still must include factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

*Walters v. Kemp*, 2020 WL 9073550, at *5 (N.D. Ga. May 5, 2020) (same with respect to Governor of Georgia); *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1078-80 (N.D. Fla. 2021) (holding Governor of Florida's "mere status as [] chief executive of [that state] does not mean that injuries inflicted by the state are *always* traceable to him," but "[i]nstead, traceability turns on nuanced questions of Florida law").

Additionally, to the extent the plaintiff asserts a claim for injunctive relief against Governor Ivey in her individual capacity – or, for that matter, against Former Commissioner Dunn or Wardens Jones, Givens, and Brooks in their individual capacities – the redressability element of the standing requirements is lacking. These defendants have no power in their individual capacities to take any action with respect to the conditions of ADOC facilities, and therefore, any order directing them as individuals to address prison conditions would not redress the plaintiff's alleged injury. *See Clay v. Thompson*, 2014 WL 3655990, at *3 (M.D. Ala. July 23, 2014) (reaching the same conclusion with respect to federal judges and prosecutors sued in their individual capacities for declaratory relief).

Accordingly, the Eighth Amendment failure-to-protect claim against Governor Ivey in her official and individual capacities, whether for damages or

injunctive relief, is due to be dismissed without prejudice on standing grounds.[11] The claim as asserted against Former Commissioner Dunn and Wardens Jones, Givens, and Brooks in their individual capacities for injunctive relief is due to be dismissed without prejudice on standing grounds, as well.

### 2. Mootness

"[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted); *see also Friends of Everglades v. S. Florida Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) ("To decide a moot issue is to issue an advisory opinion, one unnecessary to the judicial business at hand and outside the authority of Article III courts."). "An issue

---

[11] The undersigned emphasizes this aspect of her report is limited to a determination the plaintiff has failed to plead facts sufficient to establish his standing to sue Governor Ivey. The undersigned specifically does not determine there is no set of facts that could establish a state prisoner's standing to sue Governor Ivey for the purportedly unconstitutional conditions at ADOC facilities. Governor Ivey presents what the undersigned construes as an argument her delegation of responsibility for ADOC operations to a Commissioner of Corrections pursuant to Ala. Code § 14-1-1.3 attenuates her connection to the conditions of ADOC facilities and dilutes her influence over those conditions to such a degree that injuries related to those conditions never will be traceable to, or redressable by, her. (Doc. 51 at 9-10). Given the abbreviated nature of the argument and the implications it may have for pending and/or future litigation, the undersigned considers it prudent to dispose of Governor Ivey's motion on narrower grounds. This consideration is further informed by the plaintiff's status as a *pro se* litigant. The undersigned is of the opinion the court would be in a better position to evaluate the argument suggested by Governor Ivey if a counseled adversary had presented an opposing view. In sum, the facial plausibility of the factual allegations regarding traceability and, to an extent, redressability, are plainly deficient and there are multiple judicious reasons to limit this aspect of the report to that determination.

is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Friends of Everglades*, 570 F.3d at 1216 (internal quotation marks omitted).   Courts "do not determine questions of justiciability simply by looking to the state of affairs at the time the suit was filed. . . . [T]he controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Christian Coalition of Florida, Inc. v. United States*, 662 F.3d 1182, 1189-90 (11th Cir. 2011) (internal quotation marks omitted).

"The general rule in [the Eleventh] [C]ircuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (collecting authority), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).   It is clear this is the general rule where a prisoner seeks injunctive relief to remedy an allegedly unconstitutional condition existing at his particular place of confinement, naming as defendants officials who work at that institution.   *See, e.g., McKinnon v. Talladega Cnty., Alabama*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding prisoner's transfer from county jail to state prison mooted his claims against county officials seeking injunctive relief that would address conditions at county jail); *Wahl v. McIver*, 773 F.2d 1169, 1173-74 (11th Cir. 1985) (holding prisoner's transfer from county jail to state correctional institution mooted his claims against county jail officials and county commissioners seeking injunctive measures to address conditions at county

jail); *Robbins v. Robertson*, 782 F. App'x 794, 799-800 (11th Cir. 2019) (holding prisoner's transfer from one state prison to another mooted his claims against officials who had authority only over the former prison seeking an injunction directing them to provide him with an adequate vegan diet). Under these circumstances, an injunction directing the prison officials to provide some sort of relief to the prisoner "would be an empty order" because the officials "no longer have any ability to provide [the prisoner] with any food[,] [protection, medical care, etc.]." *Robbins*, 782 F. App'x at 800.

Authority suggests the general rule does not apply where a prisoner challenges allegedly unconstitutional conditions as they exist in a generally uniform fashion throughout a prison system, naming as a defendant an official who has the authority to effectuate relief on a system-wide basis (e.g., the director of the prison system). *See Jordan v. Sosa*, 654 F.3d 1012, 1027-29 (10th Cir. 2011) (providing comprehensive discussion of the mootness issue and collecting authority); *Robbins*, 782 F. App'x at 799-800 (noting plaintiff "ha[d] not sued the head of the Georgia state prison system for a policy implemented systemwide"). Where, as here, a prisoner's complaint could fairly be construed as challenging institution-specific and system-wide conditions, courts have adhered to the general rule with respect to the institution-specific officials, dismissing claims for injunctive relief against those officials as moot upon a prisoner's transfer to another institution. *See Nelson v.*

*Heiss*, 271 F.3d 891, 897 (9th Cir. 2001), *Sabir v. Williams*, 2019 WL 4038331, at *6-7 (D. Conn. Aug. 27, 2019), *appeal filed* (2d Cir. Oct. 28, 2019).

Applying the rules discussed above, when the plaintiff was transferred from St. Clair Correctional Facility to Ventress Correctional Facility, his Eighth Amendment failure-to-protect claim against Wardens Jones, Givens, and Brooks in their official capacities became moot to the extent he sought injunctive relief from these defendants.  Wardens Jones, Givens, and Brooks no longer have any ability to affect the conditions of the plaintiff's confinement because the plaintiff is not housed in an ADOC facility under their purview.[12]   However, because the plaintiff seeks system-wide injunctive relief and has named as a defendant the head of that system, his transfer does render this case moot in its entirety.

### 3. Eleventh Amendment Immunity

The Eleventh Amendment bars suits against a state by its citizens.  *See* U.S. Const. amend. XI; *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  The bar is jurisdictional. *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001).

---

[12] The undersigned notes Warden Givens no longer is employed at St. Clair.   (Doc. 37-3). Accordingly, even if the plaintiff had not been transferred from St. Clair, his claim seeking injunctive relief from Warden Givens in her official capacity would be moot.  *See Jordan*, 654 F.3d at 1028 n.16 (noting that where a plaintiff sues an official "who is subsequently 'divested of responsibility for the challenged conduct or activity during the pendency of the action,'" the suit becomes moot) (quoting 15 JAMES W. MOORE & MARTIN H. REDISH, MOORE'S FEDERAL PRACTICE § 101.94[3], at 101-257 (3d ed. 2010))

There are two exceptions to Eleventh Amendment immunity: (1) a state may waive its immunity and (2) Congress may abrogate the immunity. *Carr*, 916 F.2d at 1524 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)). However, the State of Alabama has not waived its Eleventh Amendment immunity. *See* Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Carr*, 916 F.2d at 1525. Moreover, Congress has not abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983. *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

Eleventh Amendment immunity extends to state officials sued in their official capacities for money damages. *Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 770 (11th Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015) (same); *see also Carr*, 916 F.2d at 1524 ("Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'") (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 (1984)).[13] Accordingly, to the extent the plaintiff asserts a claim for money damages against Governor Ivey; Commissioner Hamm; Wardens Jones, Givens, and

---

[13] Somewhat relatedly, a necessary element of a § 1983 claim is that the claim be asserted against a "person" acting under color of state law, *Greffey v. State of Alabama Dep't of Corr.*, 996 F. Supp. 1368, 1377 (N.D. Ala. 1998), and a suable "person" under the statute does not include a state, state agency, or state official to the extent sued in her official capacity for money damages, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Brooks; and Officer Altice in their official capacities, the claim is due to be dismissed without prejudice on Eleventh Amendment immunity grounds. *See Birdsong v. Ivey*, 2020 WL 6106614, at *6 (S.D. Ala. Sept. 22, 2020) (recommending claims for money damages against Governor of Alabama in her official capacity be dismissed as barred by Eleventh Amendment), *report and recommendation adopted*, 2020 WL 6087841 (S.D. Ala. Oct. 15, 2020); *Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1271 (M.D. Ala. 2011) (holding corrections officers and prison officials sued in their official capacities for money damages are entitled to Eleventh Amendment immunity).

State officials may, however, be sued for money damages in their individual capacities. *Wusiya*, 614 F. App'x at 393 (citing *Graham*, 473 U.S. at 165-66). Additionally, under the doctrine announced by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), a state official is subject to suit in his or her official capacity for prospective injunctive relief to end a continuing violation of federal law. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).[14]

It is not just any state official that is subject to suit under *Ex parte Young*. *See Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1207-08 (N.D.

---

[14] When sued for prospective injunctive relief in his or her official capacity, a state official is a "person" subject to suit under § 1983. *Will*, 491 U.S. at 71 n.10.

Fla. 2020) (noting "a plaintiff may not challenge a state law by choosing whichever state official appears most convenient and haling them into federal court under the aegis of 41 U.S.C. § 1983"). The state official sued must, " 'by virtue of his office,' " "be responsible for," or " 'have some connection' with," the act or conduct alleged to be unconstitutional. *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (quoting *Ex parte Young*, 209 U.S. at 157) (alteration adopted).[15] Where such responsibility or connection is lacking, the Eleventh Amendment remains a bar to suit. *Summit Med. Assocs.*, 180 F.3d at 1341.

A governor's general executive power is, in most cases, insufficient to establish his or her responsibility for, or connection with, the act or conduct at issue. *Women's Emergency Network*, 323 F.3d at 949-50. "If a governor's general executive power provided a sufficient connection to [an act or conduct alleged to be

---

[15] The analyses for responsibility or connection under *Ex parte Young* and traceability for purposes of standing are similar but remain separate issues. *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1203 (N.D. Ala. 2020), *appeal dismissed*, 2020 WL 5543717 (11th Cir. July 17, 2020); *see also Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (noting "a common thread between Article III standing analysis and *Ex parte Young* analysis"); *Dream Defs.*, 553 F. Supp. 3d at 1078-1081, 1081 n.12 (holding that where Florida Governor was a proper defendant under the "more rigorous" standing analysis, he was a proper party under *Ex parte Young*); *Hard v. Bentley*, 2015 WL 1043159, at *5 (M.D. Ala. Mar. 10, 2015) (holding reasons supporting Alabama Governor's Eleventh Amendment immunity undercut plaintiff's standing to sue governor), *aff'd sub nom. Hard v. Att'y Gen., Alabama*, 648 F. App'x 853 (11th Cir. 2016). "The Eleventh Circuit [has] suggested [] the standard for qualifying as a proper defendant under *Ex parte Young* is less exacting [than the standard for qualifying as a proper defendant for standing purposes]." *People First of Alabama*, 467 F. Supp. 3d at 1203 (citing *Jacobson v. Florida Sec'y of State*, 957 F.3d 1193, 1210 (11th Cir. 2020), which was vacated and superseded by *Jacobson v. Florida Sec'y of State* 974 F.3d 1236 (11th Cir. 2020), which reiterated the principle for which the district court cited the prior circuit court opinion).

unconstitutional] to permit jurisdiction over him [or her], any state [action] could be challenged simply by naming the governor as a defendant." *Id.* at 950.

> "That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may by raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

*Summit Med. Assocs.*, 180 F.3d at 1342 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)).

The only connection the plaintiff asserts between Governor Ivey and the allegedly unconstitutional conditions within ADOC facilities is her position as the chief executive officer of the State of Alabama. (Doc. 14 at 15). This is not sufficient to sustain a claim against the governor in her official capacity for prospective injunctive relief designed to remedy the aforementioned conditions. *Compare Searcy v. Strange*, 2014 WL 4322396, at *4 (S.D. Ala. Aug. 28, 2014) (holding complaint's singular reference to Governor of Alabama as the party having general authority over the executive branch was insufficient to make him a proper *Ex parte Young* defendant), *People First of Alabama*, 467 F. Supp. 3d at 1204 (holding Governor of Alabama's general executive power to enforce the laws was not a sufficient basis on which to name her as an *Ex parte Young* defendant), *and Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (holding that contrary to

21

prisoner-plaintiff's argument Governor of Florida's general responsibility to enforce the law did not make him a proper defendant under *Ex parte Young*), *with Luckey*, 860 F.2d at 1015-16 (holding class of indigent persons could name Governor of Georgia as an *Ex parte Young* defendant in an action challenging deficiencies in Georgia indigent criminal defense system, where the governor not only had a state constitutional obligation to enforce state laws but also had statutory power to commence criminal prosecutions and direct the state attorney general to do the same).  Accordingly, to the extent the plaintiff asserts an Eighth Amendment failure-to-protect claim against Governor Ivey in her official capacity and seeks injunctive relief, the claim is due to be dismissed without prejudice on Eleventh Amendment immunity grounds.[16, 17]

---

[16] The undersigned emphasizes she limits her determination to one that the plaintiff has failed to allege facts sufficient to render Governor Ivey a proper defendant under *Ex parte Young* and considers it unnecessary and imprudent to make any further determination.  *See supra* n.11.

[17] The *Ex parte Young* analysis vis-à-vis Wardens Jones, Givens, and Brooks is irrelevant because the claims for injunctive relief sought against these defendants in their official capacities is, as discussed above, moot.  Absent any argument to the contrary by Commissioner Hamm, the undersigned accepts at this point that he is a proper *Ex parte Young* defendant in this action.  *See, e.g., Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1312-1313 (M.D. Ala. 2012) (noting ADOC officials, including ADOC Commissioner, have conceded claims against them seeking prospective injunctive relief related to policy of segregating HIV-positive inmates fall within *Ex parte Young* exception); *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1161-62 (M.D. Ala. 2016) (holding prisoner class properly asserted claim for prospective injunctive relief related to constitutionally-inadequate mental health treatment in ADOC facilities against, *inter alia*, ADOC Commissioner in his official capacity); *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1265-67 (M.D. Ala. 2017) (same); *cf. Duke v. Dunn*, 2022 WL 138511, at *1 (N.D. Ala. Jan. 14, 2022) (dismissing as to all defendants other

**B. Failure to Serve Warden Jones**

The undersigned set out some of the facts surrounding attempts to serve Warden Jones in the procedural history section above and provides additional detail in this subsection.  The court initially ordered that copies of the amended complaint and order for special report be mailed to Warden Jones at the address provided by the plaintiff, which was the address for the Alabama Department of Corrections. (Doc. 14 at 3; Doc. 16 at 1-2).  After Warden Jones failed to return the service waiver attached to the order for special report as instructed, the court learned Warden Jones no longer is employed by the Alabama Department of Corrections and directed counsel for Former Commissioner Dunn and Warden Givens to submit under the seal the last known address for Warden Jones as reflected in the department's records.  (Docs. 35, 36).  At the court's direction, a copy of the order for special report was mailed to Warden Jones at the sealed address on two separate occasions. (Docs. 38, 40, 42).  When the court still heard nothing from Warden Jones, it directed the U.S. Marshal to serve Warden Jones personally at the sealed address.  (Doc. 44). As stated, that attempt to obtain service on Warden Jones, made on April 22, 2021, was not successful.  (Doc. 47).

Rule 4(m) provides in relevant part as follows:

---

than ADOC Commissioner in his official capacity claim for injunctive relief related to conditions of St. Clair Correctional Facility).

> If a defendant is not served within 90 days after the complaint is filed,
> the court – on motion or on its own after notice to the plaintiff – must
> dismiss the action without prejudice against that defendant or order that
> service be made within a specified time.  But if the plaintiff shows good
> cause for the failure, the court must extend the time for service for an
> appropriate period.

FED. R. CIV. P. 4(m).  When a court grants a plaintiff leave to proceed *in forma pauperis*, the officers of the court must "issue and serve all process."  28 U.S.C. § 1915(d).  "[T]he failure of the United States Marshal to effectuate service on behalf of an *in forma pauperis* plaintiff through no fault of that plaintiff constitutes 'good cause' for the plaintiff's failure to effect timely service within the meaning of Rule 4(m)."  *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1288 (11th Cir. 2009).  The Eleventh Circuit has held "[i]t is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison," and consequently "as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes."  *Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010) (remanding case to district court for determination whether prison official could be located with reasonable effort and noting that, if not, district court properly dismissed claim against that defendant).

24

Before dismissing claims against a defendant pursuant to Rule 4(m), a court also "must [] consider whether any other circumstances warrant an extension of time based on the facts of the case." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). Such circumstances may include where " 'the applicable statute of limitations would bar the refiled action, or [where] the defendant is evading service or conceals a defect in attempted service.'" *Id.* (quoting FED. R. CIV. P. 4, advisory committee's note to 1993 amendments).

Well more than 90 days have elapsed since the court ordered service of the amended complaint on Warden Jones. The procedural history set out above demonstrates the court has made reasonable efforts to locate Warden Jones but that the efforts have not been successful. Moreover, there are no other circumstances existing here that would warrant an extension of time to perfect service on Warden Jones. The statute of limitations applicable to the remaining claim against Warden Jones has expired. *See Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989) (holding in states like Alabama with more than one statute of limitations for personal injury actions, residual personal injury limitations period applies to all actions brought under § 1983); Ala. Code § 6-2-38(l) (1975) (codifying two-year residual personal injury limitations period). However, expiration of the limitations period "does not require" the court to extend the time for service under Rule 4(m). *Lepone-Dempsey*, 476 F.3d at 1282. It is simply "incumbent upon the district court to at least consider

25

this factor." *Id.* The undersigned has considered the factor and determines it does not justify an extension of the time to serve Warden Jones. The court simply has no other reasonable means of locating Warden Jones for the purpose of serving her with process and preventing a lapse of the applicable limitations period. In other words, it appears extending the time for service on Warden Jones in an effort to avoid the statute-of-limitations issue would be futile. Accordingly, the claim for money damages against Warden Jones in her individual capacity is due to be dismissed without prejudice pursuant to Rule 4(m).

## C. Governor Ivey's Request for Vacation of Order Taxing Service Costs

Rule 4(d) provides that "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons" and permits a plaintiff to request a waiver of formal service from such a defendant. FED. R. CIV. P. 4(d)(1). The rule further provides that if such a defendant located within the United States fails, without "good cause," to return a service waiver, "the court must impose on the defendant" the costs of formal service. FED. R. CIV. P. 4(d)(2). A defendant's assertion a claim is "unjust" or that the court lacks jurisdiction will not establish good cause for failing to comply with a service waiver request. FED. R. CIV. P. 4, advisory committee's note to 1993 amendments. Good cause may exist where a defendant did not receive

the service waiver request or "was insufficiently literate in English to understand it." *Id.*

Governor Ivey argues that as a state official sued in her official capacity she is not an "individual, corporation, or association" subject to service under Rule 4(e), (f), or (h) or, consequently, the waiver provisions of Rule 4(d) but, rather, was required to have been served in accordance with Rule 4(j). (Doc. 51 at 11-12). To the extent Governor Ivey was named as a defendant only in her official capacity, the undersigned might be inclined to recommend the court grant her request for vacation of the order taxing the costs of personal service against her.

Some courts have taken the position for which Governor Ivey advocates, holding a public official sued in an official capacity must be served in accordance with Rule 4(j), which governs service on a foreign, state, or local government, and consequently is not subject to the waiver provisions of Rule 4(d). *See, e.g., Chapman v. New York State Div. for Youth*, 227 F.R.D. 175, 170-80 (N.D.N.Y. 2005); *Cupe v. Lantz*, 470 F. Supp. 2d 136, 139-40 (D. Conn. 2007); *Moore v. Hosemann*, 591 F.3d 741, 747 (5th Cir. 2009). Other courts have taken the opposite position, holding a public official sued in an official capacity must be served in accordance with Rule 4(e), which governs service on individuals, and consequently is subject to the waiver provisions of Rule 4(d). *See, e.g., Whatley v. D.C.*, 188 F.R.D. 1, 2 (D.D.C. 1999); *Caisse v. DuBois*, 346 F.3d 213, 216 (1st Cir. 2003); *Oliver v. City of Oceanside*,

27

2016 WL 8730533, at *2 (S.D. Cal. July 1, 2016). The Southern District of Georgia recently has observed there does not appear to be any Eleventh Circuit precedent directly addressing how to serve a public official sued in an official capacity, additionally noting district courts within the Eleventh Circuit, like courts outside those jurisdictional bounds, appear split on the issue. *Hudson v. Morris*, 2021 WL 2188571, at *1, *1 n.3 (S.D. Ga. May 28, 2021) (collecting authority illustrative of the split); *see also* 4B FED. PRAC. & PROC. CIV. § 1109 (4th ed.) (noting split of authority). At the very least, the absence of clear, controlling authority on the issue would support a finding of good cause for failing to waive service, if Governor Ivey were named as a defendant only in her official capacity. *See Butler v. Crosby*, 2005 WL 3970740, at *3 (M.D. Fla. June 24, 2005) (noting some courts have found good cause exists "where some ambiguity clouds the understanding of Rule 4(d)'s application"); *Whatley*, 188 F.R.D. at 2 (holding that while municipal officials sued in both their official and individual capacities were subject to Rule 4(d) and (e), there was good cause for defendants' failure to waive service because their belief they were not subject to those provisions of Rule 4 was reasonable in light of absence of authority addressing the issue); *Israel v. Univ. of Utah*, 2016 WL 5794730, at *1 (D. Utah Oct. 4, 2016) (finding good cause under similar circumstances).

However, Governor Ivey was sued not only in her official capacity but also in her individual capacity. A public official sued in an individual capacity is subject to

service under Rule 4(e) and, therefore, also the waiver provisions of Rule 4(d). *See* 4B FED. PRAC. & PROC. CIV. § 1109 (explaining a government officer sued in an individual capacity "must be served as would any other individual defendant"); *Hudson*, 2021 WL 2188571, at *1 ("Generally, when a plaintiff is suing a state official in his individual capacity, service of process is governed by [Rule] 4(e)."); *Hanna v. LeBlanc*, 2017 WL 2198345, at *12 (W.D. La. Mar. 8, 2017) (concluding Louisiana Secretary of State, who was sued in his official and individual capacities, was subject to Rule 4(d)'s mandatory waiver-of-service provisions in his individual capacity), *report and recommendation adopted*, 2017 WL 2198188 (W.D. La. May 18, 2017), *aff'd*, 716 F. App'x 265 (5th Cir. 2017). Because Governor Ivey's argument for vacation of the order taxing the costs of personal service against her is limited to her status as an official capacity defendant and does not address her status as an individual capacity defendant, her request is due to be denied.[18] The undersigned will recommend the request be denied without prejudice, subject to Governor Ivey's ability to file a motion to vacate that demonstrates good cause for

---

[18] To the extent Governor Ivey would argue it was improper to send the service waiver request to her at her government office address, the argument would appear to lack merit. *See* 4A FED. PRAC. & PROC. CIV. § 1092.1 (noting "it probably is not necessary that [a service waiver request] be mailed to the defendant's residence; any address at which the defendant will receive mail promptly may be used by the plaintiff"); *Boudreaux v. Fulcher, Brooks & Daniels, LLC*, 2008 WL 11337505, at *1 (W.D. Mo. Nov. 21, 2008) (holding service waiver requests mailed to defendants at their place of employment satisfied the requirements of Rule 4(d)); *Mercedes-Benz Fin. Servs. USA LLC v. Chandler*, 2020 WL 3892360, at *4 (D.N.J. July 2, 2020) (holding service waiver request mailed to defendant at billing address, which was a family office retained by defendant to receive and pay his bills, satisfied the requirements of Rule 4(d)).

her failure to waive service as a defendant in her individual capacity – for example, that she did not receive the service waiver request.

### D. Recommendation

For these reasons, the magistrate judge recommends: (1) all claims against Governor Ivey be dismissed without prejudice on standing and Eleventh Amendment immunity grounds; (2) the claims for injunctive relief against Former Commissioner Dunn and Wardens Jones, Givens, and Brooks in their individual capacities be dismissed without prejudice on standing grounds; (3) the claims for injunctive relief against Wardens Jones, Givens, and Brooks in their official capacities be dismissed without prejudice as moot; (4) the claims for money damages against Commissioner Hamm; Wardens Jones, Givens, and Brooks; and Officer Altice in their official capacities be dismissed without prejudice on Eleventh Amendment immunity grounds; and (5) the claim for money damages against Warden Jones in her individual capacity be dismissed without prejudice pursuant to Rule 4(m).  The magistrate judge further recommends Governor Ivey's request that the court vacate its order taxing the costs of personal service against her be denied without prejudice.  Finally, the magistrate judge recommends the following be referred to her for further proceedings: (1) the claims for money damages against Former Commissioner Dunn; Wardens Givens and Brooks; and Officer Altice in

their individual capacities; and (2) the claim for injunctive relief against Commissioner Hamm in his official capacity.[19]

## E. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days.**  The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or

---

[19] With respect to Governor Ivey's suggestion the court revise its pre-service screening procedures, the undersigned simply will state this is not a cognizable request for relief that requires any action by the court.

modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this 17th day of August, 2022.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE