# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| RONALD BARNES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-00558-ACA-SGC |
| JEFF DUNN, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Ronald Barnes filed this action pursuant to 42 U.S.C. § 1983, alleging that a number of defendants violated his rights under the United States Constitution while he was incarcerated at St. Clair Correctional Facility. (Doc. 14).

The claims that remain are: (1) an Eighth Amendment failure-to-protect claim for injunctive relief against Alabama Department of Corrections ("ADOC") Commissioner John Hamm in his official capacity; (2) an Eighth Amendment failure-to-protect claim for money damages against Former ADOC Commissioner Jeff Dunn and Wardens Gwendolyn Givens and Anthony Brooks in their individual capacities; (3) an Eighth Amendment failure-to-intervene claim for money damages against Officer Horace Altice in his individual capacity; and

(4) an Eighth Amendment deliberate-indifference-to-medical-needs claim for money damages against Officer Altice in his individual capacity. (*See* doc. 56).

Before the court is a motion for summary judgment filed by the remaining defendants. They seek judgment as a matter of law on all claims against them except the deliberate-indifference-to-medical-needs claim against Officer Altice. (Doc. 60).

For the reasons explained below, the court **WILL GRANT** the motion for summary judgment.

## I.  Background and Procedural History

### 1.  Summary Judgment Facts

In deciding a motion for summary judgment, the court "view[s] all evidence and draw[s] all reasonable inferences in the light most favorable to the non-moving party." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019). The court also credits "specific facts" pleaded in a Mr. Barnes's sworn *pro se* complaint. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (quotation marks omitted).

Mr. Barnes was an inmate at St. Clair Correctional Facility housed in the H-Dorm. (Doc. 14 at 12 ¶¶ 1, 3). The H-Dorm is a large building that houses approximately 120 inmates who, most days, are monitored by a single officer. (*Id.* at 12 ¶ 3). The officer's desk is located at the very front of the dorm, so the officer

is unable to view the entire dorm. (*Id.*). Many of the officers assigned to the H-Dorm sleep, watch television, play dominoes, and "show complete disregard for what is going on in the dorm." (*Id.*). The officers do not enforce the bed assignment policy. (Doc. 14 at 12 ¶ 3).

An "alarming number" of inmates are armed with knives, wooden clubs, and other weapons. (*Id.* at 13 ¶ 3). Many inmates openly use drugs and alcohol, and this substance use "is seemingly condoned by the officers." (*Id.*). Mr. Barnes has witnessed "countless" inmates collapse from drug use in the presence of officers and counselors who do nothing. (Doc. 14 at 13 ¶ 3).

On March 19, 2019, approximately twenty inmates, including Justin Jones, were involved in a racially-motivated riot. (*Id.* at 13 ¶ 4). Several inmates were assaulted. (*Id.*). Mr. Jones struck one inmate in the face with a steel lock and chased another inmate with a knife. (*Id.*). Mr. Barnes attests "[t]here is no doubt" everyone, including two unidentified officers on duty in H-Dorm, witnessed the riot and Mr. Jones's conduct. (*Id.*).[1] However, the officers did not report or otherwise document the incident or question or punish Mr. Jones. (Doc. 14 at 13 ¶ 4). The whole thing was "swept under the rug." (*Id.*).

---

[1] Mr. Barnes notes this was one of the rare occasions on which more than one officer was assigned to the H-Dorm. (Doc. 14 at 13).

Around 11:00 p.m. on March 20, 2019, Mr. Barnes awoke to find Mr. Jones stabbing him and another unidentified prisoner beating him with a wooden club. (Doc. 14 at 5, 12 ¶ 2, 14 ¶ 5).[2] At the time of the assault, Officer Altice was stationed at the H-Dorm officer's desk approximately thirty to thirty-five feet away. (*Id.* at 14 ¶ 5). Mr. Barnes screamed for help, but no one responded. (*Id.*). As Mr. Barnes made his way toward the front of the dorm, he blacked out twice due to blood loss. (*Id.*). Officer Altice made Mr. Barnes wait over half an hour before allowing him to go to the health care unit. (*Id.*).

An ADOC incident report indicates Mr. Barnes arrived at the front of the dorm at approximately 1:50 a.m. on March 21, 2019. (Doc. 60-1). From there, he went to the infirmary, where it was determined he should be taken to the hospital by ambulance. (Doc. 14 at 14 ¶ 5; doc. 60-1; doc. 60-6 at 8). At the hospital, Mr. Barnes received treatment for stab wounds to his head, left arm, and right check; bruises; and knots. (Doc. 14 at 14 ¶ 5; doc. 60-1; doc. 60-3). Mr. Barnes returned to St. Clair a few hours later and remained in the infirmary for twenty-three hours of observation. (Doc. 60-1). Mr. Barnes continues to suffer constant, agonizing headaches and experiences dizziness. (Doc. 14 at 16 ¶ 8). He is easily frightened and awakens from sleep thinking he is being attacked. (*Id.*).

---

[2] According to an ADOC inmate body chart documentation form, Mr. Barnes stated he was asleep when he was hit with something and then "[he] woke up [and] [Mr. Jones] stabbed him." (Doc. 60-3).

4

Former Commissioner Dunn was "responsible for insuring [sic] reasonable inmate safety for those confined in the ADOC." (*Id.* at 15 ¶ 7). Wardens Givens and Brooks "were responsible for insuring [sic] reasonable inmate safety at St. Clair prison." (*Id.*). Mr. Barnes alleges that Former Commissioner Dunn and Wardens Givens and Brooks had knowledge of unconstitutional conditions within the ADOC and did not take reasonable steps in response and were deliberately indifferent to their duties. (Doc. 14 at 15–16 ¶ 7).

Warden Givens has submitted an affidavit in which she asserts she was not on duty when Mr. Jones attacked Mr. Barnes; the "area" where the attack occurred was not "an area of [her] responsibility"; she did not willfully refuse to, or incapacitate herself in such a way that she could not, perform her duties; and she did not recklessly disregard any issues brought to her attention. (Doc. 60-4). Warden Brooks also submitted an affidavit in which he simply asserts he has no recollection of the facts alleged in the amended complaint. (Doc. 60-5).

2.  Procedural History

The procedural history of this case is extensive. The court does not recite—or, as the case may be, re-recite—that history here, except as it is directly relevant to the pending motion.

The amended complaint is the operative pleading. (Doc. 14). After entering an order dismissing some of Mr. Barnes's claims (doc. 56), the court ordered the

remaining defendants to file a "special report" within thirty days that addressed the remaining claims asserted in the amended complaint (doc. 57). The remaining defendants filed a motion on January 12, 2023, seeking an extension until March 3, 2023, to file a special report. (Doc. 58). The court granted the request (doc. 59), and the remaining defendants timely filed a special report supported by affidavits and other evidence (doc. 60). The court construed the special report as a motion for summary judgment in an order entered on April 13, 2023, and notified Mr. Barnes he had twenty-one days to respond to the motion by filing affidavits or other evidence of his own. (Doc. 64). The court also advised Mr. Barnes of the consequences of any default or failure to comply with Rule 56 of the Federal Rules of Civil Procedure. (*Id.*); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). More than twenty-one days have passed without a response from Mr. Barnes, and the defendants' motion for summary judgment now is ripe for disposition.

## II.   Discussion

The defendants have moved for summary judgment on the failure-to-protect and failure-to-intervene claims but not the deliberate-indifference-to-medical-needs claim. (Doc. 60).

The court must grant summary judgment if the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hellums*, 945 F.3d at 1148. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

    1.    <u>Official Capacity Claim Against Commissioner Hamm</u>

Mr. Barnes asserts an Eighth Amendment failure-to-protect claim against Commissioner Hamm in his official capacity for purposes of seeking injunctive relief. Commissioner Hamm argues that he is entitled to summary judgment because Mr. Barnes has not shown a violation of his Eighth Amendment rights. (Doc. 60 at 8–13). The court agrees.

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832–33 (1994) (quotations omitted). This duty includes "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a failure-to-protect claim, a plaintiff must point to evidence showing: (1) the inmate was incarcerated under conditions that posed a substantial risk of serious harm, (2) deliberate indifference to that risk by each of the defendants against whom a plaintiff makes the claim; and (3) causation. *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021).

The first element of a failure to protect claim is an objective analysis which requires a plaintiff to point to evidence showing that "conditions were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233. The risk may be individualized or general. *See id.* at 1233–38. Here, Mr. Barnes's sworn amended complaint does not point any specific, individual threat to his safety. (*See generally* doc. 14). Instead, he alleges a substantial risk of harm caused by generalized lack of safety at St. Clair. (*Id.*; see also doc. 57 at 2).

Before an official's failure to protect a prisoner can become a liability based on a generalized risk of harm, there must be more than the occasional, isolated incident. *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320-1321 (11th Cir. 2005). So, the evidence must show "[a]n excessive risk of inmate-on-inmate violence" to satisfy the substantial risk of serious harm standard for a failure-to-protect claim based on generalized violence within a prison. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).

Mr. Barnes has not submitted evidence demonstrating that he was subject to an excessive risk of inmate-on-inmate violence. Mr. Barnes's sworn amended complaint alleges that he was subject to "unconstitutional conditions," and that state officials have acknowledged the "barbaric conditions" and "the staggering number" of violent acts at St Clair. (Doc. 14 at 15 ¶ 7). But these are generalities

and conclusions; they are not "specific fact[s]" that the court must credit. *See Caldwell*, 748 F.3d 1090, 1098 (11th Cir. 2014). Mr. Barnes has offered no evidence about the number of inmate-on-inmate assaults, the time period during which they occurred, or the section of the prison where they took place. Mr. Barnes has submitted evidence of one riot the day before other inmates stabbed him and attacked him with a wooden club. (Doc. 14 at 13–14 ¶¶ 4–5). But this is not sufficient to create a question of fact about whether "serious inmate-on-inmate violence was the norm or something close to it." *Marbury*, 936 F.3d at 1234.

Although Mr. Barnes has provided evidence about specific features of St. Clair and the H-Dorm that may make the prisoner "particularly violent," (*see* doc. 14 at 12–13 ¶ 3) those facts alone are not sufficient to survive summary judgment where Mr. Barnes has "failed to produce evidence that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm." *Id.* at 1235.

Because Mr. Barnes has not demonstrated that he was subject to a substantial risk of serious harm, he has not shown a violation of his Eighth Amendment rights and summary judgment is appropriate in favor of Commissioner Hamm. *See Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010) (to obtain injunctive relief, a plaintiff must show, among other things, "that

he has prevailed in establishing the violation of the right asserted in his complaint").

> 2. Individual Capacity Claims Against Former Commissioner Dunn, Wardens Givens and Brooks, and Officer Altice

Mr. Barnes asserts Eighth Amendment failure-to-protect claims against Former Commissioner Jeff Dunn and Wardens Gwendolyn Givens and Anthony Brooks in their individual capacities. He also asserts an Eighth Amendment failure-to-intervene claim for money damages against Officer Horace Altice in his individual capacity. Former Commissioner Dunn, Wardens Givens and Brooks, and Officer Altice move for summary judgment on these claims, arguing that they are entitled to qualified immunity from the claims. (Doc. 60 at 7).

Qualified immunity "protects an officer unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quotation marks omitted). Only "the plainly incompetent" or those who knowingly violate federal law are not entitled to qualified immunity. *Id.* (quotation marks omitted).

In the Eleventh Circuit, a defendant asserting qualified immunity as a defense need only show that he was "engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Epps v. Watson*, 492 F.3d

1240, 1243 (11th Cir. 2007). Here, the defendants argue that all of their allegedly unconstitutional conduct occurred within the scope of their discretionary authority, and Mr. Barnes's sworn allegations support that finding. (Doc. 60 at 7; *see* doc. 14 at 4, 15). Because the defendants have shown they were acting within their discretionary authority, the burden shifts to Mr. Barnes to show that the defendants violated his constitutional rights and that the rights were "clearly established at the time of the alleged violation." *Robinson v. Sauls*, 46 F.4th 1332, 1340–41 (11th Cir. 2022) (quotation marks omitted). Mr. Barnes must satisfy both requirements and the court may analyze them in either order. *Bradley v. Benton*, 10 F.4th 1232, 1238 (11th Cir. 2021).

Mr. Barnes has not responded to the defendants' motion for summary judgment. The court recognizes that Mr. Barnes is *pro se* and that Mr. Barnes's failure to respond to the motion for summary judgment does not preclude the court from accepting his specific sworn allegations as evidence that could create a genuine dispute of fact for trial. *See Caldwell*, 748 F.3d at 1098. But where, as here, defendants have made a showing that the alleged unconstitutional acts occurred within the scope of their discretionary authority, a plaintiff's failure to respond to a qualified immunity defense is fatal to individual capacity claims.

Because Mr. Barnes did not respond to the motion for summary judgment, he has not satisfied his burden of showing that Former Commissioner Dunn,

11

Wardens Givens and Brooks, or Officer Altice violated his constitutional rights or that any rights were clearly established, and he has forfeited any such argument. *See Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 & n.4 (11th Cir. 2002) (explaining that when a plaintiff does not argue that the defendant violated clearly established law, the plaintiff forfeits that argument); *see also United States v. Campbell*, 26 F.4th 860, 890 (11th Cir. 2022) (explaining that a party forfeits an argument or issue "when a party fails to raise an argument or issue in its brief"); *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012) ("[B]eing *pro se* does not, by itself, excuse a failure to raise an argument."); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, . . . issues not briefed on appeal by a *pro se* litigant are deemed abandoned[.]") (internal citations omitted).

Accordingly, summary judgment is appropriate in favor of Former Commissioner Dunn, Wardens Givens and Brooks, and Officer Altice on the basis of their qualified immunity defense.

### III.   Conclusion

The court **WILL GRANT** the defendants' motion for summary judgment. The court **WILL ENTER JUDGMENT AS A MATTER OF LAW** in favor of the defendants on the following claims: (1) the Eighth Amendment failure-to-protect claim for injunctive relief against Commissioner Hamm in his official

capacity; (2) the Eighth Amendment failure-to-protect claim for money damages against Former Commissioner Dunn and Wardens Givens and Brooks in their individual capacities; and (3) the Eighth Amendment failure-to-intervene claim for money damages against Officer Horace Altice in his individual capacity.

The Eighth Amendment deliberate-indifference-to-medical-needs claim against Officer Altice will proceed.

**DONE** and **ORDERED** this July 19, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE